**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHERYL ANDERSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 09-194 |
| | : | |
| RADIO ONE, INC., | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                    **September 20, 2010**

Plaintiff, Cheryl Anderson, has alleged that Defendant, Radio One, Inc., terminated her employment in violation of both the Age Discrimination in Employment Act, 29 U.S.C. 631 et seq., ("ADEA") and Title I of the Americans with Disabilities Act, 42 U.S.C. 12111 et seq., ("ADA"). Before the Court is Defendant's Motion for Summary Judgment, which seeks dismissal of both claims. Because Plaintiff has failed to produce sufficient evidence establishing: (1) that her discharge was pretextual under either statute; and (2) that she is disabled within the meaning of the ADA, Defendant's motion will be granted.

## I.     FACTUAL & PROCEDURAL HISTORY

Unless otherwise indicated, the facts discussed below are undisputed. Plaintiff, who was forty-eight years of age during the relevant time periods, had been diagnosed with high blood pressure in 1996. She also suffered a heart attack in 2005. Defendant, Radio One, Inc. (hereinafter "Radio One"), is a broadcasting company that operates radio stations in the Philadelphia area. During the summer of 2007, Radio One initiated a contest to fill a programming assistant position,

which would support the program directors. Plaintiff won the contest and began her employment with Radio One on October 15, 2007, primarily being tasked with administrative functions. (Def.'s State. Facts, ¶¶ 1, 15-16, 19, 70, 73.)

Plaintiff's direct supervisor was Elroy Smith, the operations manager of the Philadelphia stations. (Def.'s State. Facts, ¶ 3.) Cheryl Golden and Moresha Strickland were assistant program directors, who indirectly supervised Plaintiff's work. (Def.'s State. Facts, ¶ 4; Hicks Depo., pp. 41-42; Strickland Depo., pp. 37-38; Golden Depo., p. 40.) Karen Hicks, who managed accounting and payroll, also had daily contact with Plaintiff. (Def.'s State. Facts, ¶ 4; Hicks Depo., pp. 9, 40-41.)

Soon after starting at Radio One, Smith began complaining about Plaintiff's work performance. On October 22, 2007, Smith sent Plaintiff an email criticizing her failure to deliver his phone messages on a timely basis. Shortly thereafter, Smith advised Plaintiff via email that she needed to inform additional persons of his whereabouts when he was absent from the office. On November 14, 2007, Smith sent Plaintiff an email memorandum, which outlined four points of concern with her performance, including her need to "raise [her] efficiency level," "get things done on time," "double check on all of [her] work," and "work on being ahead of [her] schedule at all times." (Def.'s State. Facts, ¶¶ 25-28.)

Smith also expressed concern with Plaintiff's failure to complete a particular ratings assignment within the necessary time constraints. The next day, Smith instructed Plaintiff by email that she needed to "read over everything thoroughly so there wo[uldn't] be any oversights." Smith additionally complained that he had just received notification of his missed calls from several days earlier. In an email dated November 19, 2007, Smith advised Plaintiff that he was receiving his messages too late and that it was embarrassing. The email further requested that she "handle this

responsibility effective today" and "clean out voice mail (3) times a day as we agreed" [sic]. (Def.'s State. Facts, ¶¶ 28, 30, 34.)

Complaints regarding Plaintiff's performance were not limited to Smith. By the beginning of November 2007, Golden had also become concerned over Plaintiff's failure to meet deadlines and she conveyed these concerns to Smith. In addition, Strickland provided two or three negative assessments of Plaintiff's performance. (Def.'s State. Facts, ¶¶ 42-45.)

Reviews of Plaintiff's work were not universally negative. Golden testified that when Plaintiff began at Radio One, her organizational skills were very good, that she initially performed well at juggling work responsibilities between the three radio stations, and that, in her estimation, Plaintiff's delivery of voice messages occurred within a reasonable time. (Pl.'s State. Facts, ¶¶ 41, 95.)

At some point during her employment, Plaintiff began to experience chest pains when she was "highly stressed," accompanied by anxiety and shortness of breath. (Anderson Depo., p. 192:19-24.) Plaintiff attributed these sensations to her "heart condition," which she disclosed to Golden, Hicks, and Smith individually.[1] (Pl.'s State. Facts, ¶ 80; Anderson Depo., p. 208.; Hicks Depo., p. 52.) There is some dispute as to when Plaintiff notified Golden of her condition. According to Plaintiff, she informed Golden that she was experiencing chest pains, "either a day or a couple days prior to November 19th." (Pl.'s State. Facts, ¶ 80.) Golden stated that the conversation occurred either at the end of October or the beginning of November of 2007. (Pl.'s State. Facts, ¶ 80.) In either case, Golden responded by advising Plaintiff to apprise Smith of her chest pains and prior

---

[1] Plaintiff had not mentioned her high blood pressure or heart attack during the application process. (Def.'s State. Facts, ¶ 74.)

heart attack.  (Pl.'s State. Facts, ¶ 80; Golden Depo., pp. 53:20-54:1.)  Plaintiff also mentioned her heart attack to Hicks, who indicated that she would keep Plaintiff's condition in mind.  (Pl.'s State. Facts, ¶ 80; Anderson Depo., p. 208.; Hicks Depo., p. 52.)

Plaintiff told Smith of her heart condition during the afternoon of November 19, 2007. (Def.'s State. Facts, ¶ 81; Pl.'s State. Facts, ¶ 81.)  Though she could not recall the details of the conversation, Plaintiff testified that Smith's reaction was not sympathetic, and that he acted "kind of funny" or "very strange" afterward.  (Pl.'s Ex. B., pp. 209-12.)  Smith's criticism of Plaintiff's work performance peaked the following day, when the two met and Smith issued Plaintiff a memorandum with the subject line "Observations #2."  (Def.'s State. Facts, ¶¶ 36, 37.)  In this memorandum, Smith listed numerous deficiencies with Plaintiff's work.[2]  Plaintiff signed the memorandum despite disagreeing with its contents.  (Pl.'s State. Facts, ¶ 39.)

Following the meeting on November 20, 2007, Plaintiff testified that Smith's "whole attitude" or "whole demeanor" changed towards her.  (Pl.'s State. Facts, ¶ 81; Anderson Depo., pp. 213:22-214:4.)  The record indicates, however, that Smith's criticism of Plaintiff continued after this meeting.  Smith told Plaintiff that she was "too slow" in completing her work, and on December 4, Smith sent a series of emails highlighting proof-reading errors in an email that Plaintiff had drafted and sent on his behalf.  (Def.'s State. Facts, ¶¶ 40, 47.)

---

[2] The deficiencies included: Plaintiff's "follow through" needed to be polished, referring to late submission of mail; Plaintiff had submitted a particular power point presentation one day late, and it was incorrect; an arrangement whereby another employee retrieved Smith's voice mail messages, most of which were delivered late, was "a big problem;" Smith worried about giving Plaintiff many assignments because he did not expect them to be completed correctly; Plaintiff had made an error in duplicating a set of power point slides while creating a presentation; Smith preferred Plaintiff to advise him when assignments were late rather than to wait for him to ask her about them; Plaintiff spent too much time on each of her assignments; it was imperative for Plaintiff to double check everything that she submitted to him; and Plaintiff's "follow through on a ratings assignment was delayed." (Def.'s State. Facts, ¶ 37; Def.'s Ex. P.)

On December 13, 2007, Smith and Hicks met with Plaintiff, terminated her as programming assistant, and offered her a position as a receptionist. (Def.'s State. Facts, ¶¶ 51, 52.) Plaintiff responded by asking whether she had done anything wrong, but she received no response. (Pl.'s State. Facts, ¶ 52; Anderson Depo., p. 134:4-13.) Plaintiff rejected the receptionist position, and her employment with Radio One was terminated. (Def.'s State. Facts, ¶ 53.) Plaintiff was replaced by Zorina Brown, who was in her twenties. (Id. ¶ 83.)

Plaintiff filed her complaint against Radio One on January 15, 2009, raising (1) age discrimination under the ADEA; (2) discrimination on the basis of a disability under the ADA; (3) violation of the Fair Labor Standards Act; and (4) violation of the Pennsylvania Minimum Wage Act. On October 9, 2009, Radio One filed its Motion for Summary Judgment. In her response, Plaintiff abandoned her claims under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act. We heard oral argument on Plaintiff's remaining claims on February 16, 2010.

## II.    SUMMARY JUDGMENT STANDARD

According to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving

party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. A "[p]laintiff cannot simply reassert factually unsupported allegations in his pleadings." Poles v. St. Joseph's Univ., 1995 WL 542246, at *5 (E.D.Pa. Sep. 11, 1995) (citing Celotex, 477 U.S. at 325).

## III.    PLAINTIFF'S AGE DISCRIMINATION IN EMPLOYMENT ACT CLAIM

The ADEA states that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). The Supreme Court has explained that the phrase "because of" in this provision signifies that age must be more than a "motivating factor" in the employer's action, and thus claims rooted in the "mixed motive" doctrine of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) are unavailable. Gross v. FBL Financial Servs., Inc., 129 S. Ct. 2343, 2350-52 (2009). Therefore, "[t]o establish a disparate-treatment claim . . . under the ADEA . . . a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision." Id. at 2351. Where, as with the case before the Court, a plaintiff has produced no direct evidence that age was the cause of her employer's course of action, the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) is applied. See Smith v. City of Allentown, 589 F.3d 684, 690-92 (3d Cir. 2009).

Under the McDonnell Douglas paradigm, an employee must first establish a prima facie case of discrimination. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005). A plaintiff establishes a prima facie case of age discrimination by demonstrating that "(1) the plaintiff is over 40 years of age; (2) the plaintiff is qualified for the position in question; (3) the plaintiff suffered an adverse

employment decision; and (4) the plaintiff was replaced by a sufficiently younger person to create an inference of job discrimination." Evans v. Penn. Power and Light Co., 98 Fed. Appx. 151, 154 (3d Cir. 2004) (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc)). For the purposes of this motion, Radio One does not dispute that Plaintiff has made out her prima facie case.

Once Plaintiff has met her initial burden, "the burden [of production] shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." Fasold, 409 F.3d at 184. Radio One asserts that it terminated Plaintiff on the basis of her "poor performance and failure to meet the expectations of the job." (Def.'s Br. at 9.) Thus, Plaintiff, "the aggrieved employee," must "proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." Fasold, 409 F.3d at 184.

In establishing a pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). In order to discredit an employer's articulated non-discriminatory reason, a plaintiff's evidence must therefore be sufficient to allow a reasonable inference that the reason was "either a *post hoc* fabrication or otherwise did not actually motivate the employment action[.]" Id. (emphasis in original). It is insufficient for Plaintiff "simply [to] show that the employer's decision was wrong or mistaken." Id. at 765. She "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable

factfinder could rationally find them 'unworthy of credence.'" Id.

With these standards in mind, we find that Plaintiff has failed to raise an issue of material fact as to whether Radio One's reason for terminating her was a pretext for age discrimination. As discussed below, Plaintiff cites several facts to support her claim. We conclude, however, that these facts are insufficient to survive summary judgment.

Plaintiff first argues that she "possessed the skills and experience required of an administrative assistant[,]" as she had previously worked in a similar position at TIAA-CREF, a financial services company, without receiving any "discipline or counseling regarding her job performance." (Pl.'s Br. at 6.) The adequacy of her previous performance, she suggests, is evidence that the criticisms produced by Radio One are fabrications. (Id.) However, Plaintiff's performance at her former employment is not at issue in this case and is irrelevant to Radio One's decision to terminate her. See Bernhard v. Nexstar Broadcasting Group, Inc.,146 Fed. Appx. 582, 586-87 (3d Cir. 2005) (finding that positive reviews from co-workers and managers in an employee's subsequent employment is irrelevant to the issue of pretext).

Plaintiff next contends that the instances of positive feedback from Golden and Hicks belie Radio One's negative assessment of her abilities. (Pl.'s Br. at 6-9.) However, "[t]he mere existence of positive evaluations by a supervisor does not give rise to the inference that negative evaluations from another supervisor were a pretext." Hunter v. Rowan University, 299 Fed. Appx. 190, 194-95 (3d Cir. 2008); see Sullivan v. Nationwide Life Ins. Co. of America, 2010 WL 2654673, at *12 n.125 (D.Del. Jul. 6, 2010) (collecting Third Circuit cases holding that, without more, past positive reviews from other supervisors in same company does not establish pretext).

Next, Plaintiff argues that Smith and Hicks's silence at her December 13, 2007 termination meeting, when she asked if she had done anything wrong, demonstrates pretext. (Pl.'s Br. at 7; Pl.'s State. Facts, ¶ 52.) This argument also falls short because a, "lack of information about performance problems does not constitute evidence of pretext." Robinson v. Matthews Intern. Corp., 2010 WL 763869, **3-4 (3d Cir. Mar. 8, 2010). This is especially true where prior performance evaluations indicate a "downward trajectory." Id.

Lastly, Plaintiff maintains that the age and "lesser qualifications" of Brown, Plaintiff's replacement, are suggestive of pretext. Courts have found summary judgment appropriate where a Plaintiff offers only her prima facie case on the issue of pretext. See Stahlnecker v. Sears, 2009 WL 661927, *7 (E.D.Pa. Mar. 11, 2009). While Brown was significantly younger than Plaintiff, there is no evidence of record regarding Brown's qualifications. However, even had Plaintiff produced evidence that Brown was less qualified, that evidence would not establish pretext. See Robinson, 2010 WL 763869, at *4 (quoting Fuentes, 32 F.3d at 765) (holding that the fact that an employee has more experience or a higher level of education than her replacement is not necessarily evidence of pretext, "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent" in reaching its decision).

Because Plaintiff has not produced any evidence that an invidious discriminatory reason was more likely the motivating reason for her termination, her claim under the ADEA must fail.

## IV.    PLAINTIFF'S AMERICANS WITH DISABILITIES ACT CLAIM

Title I of the ADA provides that covered employers may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112. Pretext claims brought under the ADA, like their ADEA counterparts, are examined under the burden-shifting analysis of <u>McDonnell Douglas</u>. <u>Newman v. GHS Osteopathic, Inc.</u>, 60 F.3d 153, 157-58 (3d Cir. 1995). To establish a <u>prima facie</u> case of disability discrimination under the ADA, a plaintiff must demonstrate: (1) that she is a disabled person within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that she has suffered an otherwise adverse employment decision as a result of discrimination. <u>Gaul v. Lucent Technologies</u>, 134 F.3d 576, 580 (3d Cir. 1998).

For the following reasons, we find that Plaintiff has failed to produce sufficient evidence from which a reasonable factfinder could conclude that she is disabled within the meaning of the ADA. Moreover, even if Plaintiff could demonstrate a disability protected by the ADA, her claim would fail on the issue of pretext, as she has not created a genuine issue of material fact as to whether Radio One's articulated reason for her termination is a pretext for discrimination.

## A.     **Disability Under the ADA**

Section 12102 of the ADA defines "disability" as:

  (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

  (B) a record of such impairment; or

  (C) being regarded as having such an impairment.

42 U.S.C. 12102(2).[3]  Plaintiff claims that she is disabled as defined in subsections 12102(2)(A) and 12102(2)(c).  (Pl.'s Br. at 9.)

### 1.    *Actual Disability*

Plaintiff first argues that she is disabled under 42 U.S.C. 12102(2)(A), noting that her high blood pressure and prior heart attack substantially limits her major life activities of breathing, thinking and concentrating.  However, because Plaintiff has failed to point to evidence tending to demonstrate substantial limitation of these activities, we conclude that Plaintiff has not sufficiently established that she is actually disabled under 12102(2)(A).

The Supreme Court has made clear that "whether a person has a disability under the ADA is an individualized inquiry."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999).  "It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment.  Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'"  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002).  "Thus, to establish a statutorily protected disability, the employee must show that she has an impairment; identify the life activity that she claims is limited by the impairment; and prove that the limitation is substantial."  Fiscus v. Wal-Mart Stores, Inc., 385

---

[3] Congress recently amended the ADA through the ADA Amendments Act of 2008 (hereinafter "the Act"), by which it repudiated the decisions in Sutton v. United Airlines, Inc., 527 U.S. 471 (1999) and Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002). Pub. L. No. 110-325,§ 8, 122 Stat. 3553 (2008).  The Act expanded the definition of "disability" under the ADA in favor of broader coverage as of its effective date, January 1, 2009.  See id. § 4(a), 122 Stat. at 3555 ("The definition of disability in this Act shall be construed in favor of broad coverage of individuals.").  Nevertheless, because the conduct at issue in this case occurred prior to that effective date, and because the Act is silent as to retroactivity, this Court declines to apply its amendments retroactively, and the former standards apply.  See Amorosi v. Molino, 2009 WL 737338, *4 n. 7 (E.D.Pa. Mar. 19, 2009) (declining to apply the Act retroactively for the same reasons); see also Colwell v. Rite Aid Corp., 602 F.3d 495, 501 n.5 (3d Cir. 2010) (declining to decide the issue, but noting that "every court of appeals decision of which we are aware has held that the amendments are not retroactive").

F.3d 378, 382 (3d Cir. 2004). Major life activities are those "that are of central importance to daily life." Toyota, 534 U.S. at 197. They include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

> A substantial limitation is one that renders an individual:
>
> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Factors to be considered in determining whether a limitation is substantial include: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Health conditions that "cause moderate limitations on major life activities do not constitute disabilities under the ADA." Collins v. Prudential Inv. And Ret. Servs. 119 Fed. Appx. 371, 376 (3d Cir. 2005).

Plaintiff first claims that her breathing was impaired by her heart condition. Breathing is a major life activity under the ADA. 29 C.F.R. § 1630.2(i). However, "temporary, non-chronic impairment[s] of short duration" are not disabilities covered by the ADA. Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002). Accordingly, courts have found summary judgment appropriate where plaintiffs allege only intermittent breathing difficulties and conditions that are well controlled with medication. Adams v. Pennsylvania, 2009 WL 2707601, at *6 (M.D.Pa., Aug. 25, 2009). Further, "[m]ild coughing or shortness of breath fail to trigger ADA protections unless they

are so debilitating [that they] limit [the] . . . ability to hold a conversation or move about freely." Id. (citing Gallagher v. Sunrise Assisted Living of Haverford, 268 F. Supp. 2d 436, 441 (E.D.Pa. 2003)).

Plaintiff testified that when she was "highly stressed" at Radio One, she "started" to have chest pains accompanied by nervousness and fear that she might be experiencing a heart attack. (Anderson Depo., p. 192.) She asserted that this chest pain and apprehension caused her shortness of breath, (id.), but provided neither dates nor further description. Plaintiff recalled that she experienced these symptoms twice – once around the time of her first payroll, and again when she was "getting overwhelmed with . . . all the work" and "had to stay late." (Anderson Depo., pp. 196-98.) Plaintiff's testimony does not address the severity, duration, permanence, and impact of her breathing difficulties, which are the factors we are to consider under 29 C.F.R. § 1630.2(j)(2).[4] At best she has alleged an intermittent breathing problem triggered by periods of stress. Nothing in the record suggests that Plaintiff's shortness of breath pervades her life on a "day to day basis," and two generalized occurrences over a two-month period is less significant than the weekly attacks found insufficient elsewhere.[5] Plaintiff has similarly made no showing that her shortness of breath impeded her mobility or ability to converse. In short, Plaintiff cannot demonstrate that she is substantially limited in the major life activity of breathing under the ADA.

---

[4] Plaintiff also presents no medical evidence concerning the nature, severity, duration, or impact of her heart condition. See Marinelli v. City of Erie, Pa., 216 F.3d 354, 360-61 (3d Cir. 2000) (noting while medical evidence may not be required to sustain a claim of disability under the ADA, its absence favors defendant's position); Claycomb v. Playtex Prods., Inc., 2007 WL 1794150 (D.Del. Jun. 19, 2007) (holding that a failure to present medical evidence of asthmatic symptoms was fatal to plaintiff's claim).

[5] See Amorosi v. Molino, 2009 WL 737338, *5 (E.D.Pa. Mar. 19, 2009) (holding plaintiff's breathing was not substantially limited by unspecified anxiety disorder because hyperventilation occurred only about once per week, anxiety was well controlled with medication, and plaintiff "made no affirmative showing detailing the length or severity of her breathing problem episodes"); Reese v. American Food Service, 2000 WL 1470212, *7 (E.D.Pa. Sep. 29 2000) (holding plaintiff was not significantly more limited in his breathing than the average person where he described difficulty taking deep breaths on a specific occasion and generalized "shortness of breath when moving through narrow crawl spaces").

Plaintiff next argues that her major life activities of thinking and concentrating were impaired by her heart condition. Thinking and concentrating are components of general cognitive function, and as such are recognized major life activities under the ADA. Weisburg v. Riverside Tp. Bd. Of Educ., 180 Fed. Appx. 357, 362 (3d Cir. 2006). Nonetheless, we conclude that no reasonable finder of fact could conclude that Plaintiff's heart condition is the source of the impairment of these activities or that the impairment is substantial.

Plaintiff has failed to produce evidence demonstrating that her heart condition limited her ability to think and concentrate. See Fiscus, 385 F.3d at 382 (stating that to establish a disability under the ADA, a plaintiff must "identify the life activity that . . . is limited by the impairment'") (emphasis added). On this point, Plaintiff testified as follows:

> Q.     Okay. You also listed that one of your major life activities that was affected by your disability was your ability to concentrate.
>
> A.     When I'm highly stressed, yes . . . when you have a stressful job, you have stress at work, I don't mean like that. But with home and everything, and wondering if I'm going to have a house and all that, and all this, fulfilling this job, that did interfere with my concentration.
> . . . .
> Q:     And I want to know, how was that manifested . . . what's the connection between your heart attack and your inability to concentrate, that major life activity?
>
> A:     The stress.
> . . . .
> Q:      . . . When you say it affected your ability to concentrate, what does that mean? Give me some examples of when you were unable to concentrate at the level that you were if you weren't disabled.
>
> A:     I know when I was doing . . . one of the reports for -- for [Smith] . . . and knowing that he needed it right away because I didn't have the training . . . between that and getting the memos . . . finding everything wrong, that didn't help. Because it seemed like every time I would try to do something,

14

I was worried about am I going to get another memo from him. And that just was very stressful for me

And the bottom line, if I kept getting memos or emails, eventually I would lose my job; then I'm going to lose my house and everything. And it was just horrendous.

. . . .

Q:     You also checked off thinking, how did your disability impact on the major life activity of thinking while you worked at Radio One?

A:     To me, thinking and concentrating almost coincide with each other.

Q:     Okay. So it's the same things as you talked about with concentrating?

A:     Uh-huh.

(Anderson Depo., pp. 198-202). This testimony reflects that Plaintiff's stress over job evaluations and personal finances, rather than her heart condition, impaired her ability to think and concentrate. Thus, although Plaintiff has alleged a limitation on a major life activity, she has not sufficiently established that such limitation was caused by her impairment.

Even if Plaintiff's testimony sufficiently identified her heart condition as the cause of her diminished ability to think and concentrate, her claim would still fail because the limitation alleged is not substantial. Cognitive limitations that lack long term impact and that stem from poor evaluations from a supervisor do not exhibit the severity, permanence, and longevity necessary to establish a substantial impairment. Maslanka v. Johnson & Johnson, Inc., 305 Fed. Appx. 848, 852 (3d Cir. 2008) (citing 9 C.F.R. § 1630.2(j)(1). Plaintiff's testimony links her limitation to the rigors of her position at Radio One, anxiety over Smith's evaluation of her performance, and stress over her personal finances. Because her alleged cognitive limitations were specific to her position and financial problems, not a severe, long-term impairment, they are not substantial under the ADA. See id. at 852 (finding that plaintiff was not disabled where his anxiety and depression were expected

to last only as long as he retained his current supervisor or continued to receive negative evaluations, and where his ability to sleep, concentrate, and work was not limited on a long-term basis).

Because Plaintiff has failed to present sufficient evidence to raise an issue of material fact as to whether she is limited in any major life activity, we conclude that she is not actually disabled within the meaning of Section 12102(2)(A) of the ADA.

### 2. *"Regarded As" Disabled*

Plaintiff next argues that, regardless of whether or not she is actually disabled, Radio One "regarded [her] as" disabled within the meaning of 12102(2)(C). An individual is "regarded as" disabled when she:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Hershgordon v. Pathmark Stores, 285 Fed. Appx. 846, 848 (3d Cir. 2008) (citing Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir. 1999)). "Liability attaches only to a mistake that causes the employer to perceive the employee as disabled within the meaning of the ADA, i.e., a mistake that leads the employer to think that the employee is substantially limited in a major life activity." Taylor v. Pathmark Stores, Inc. 177 F.3d 180, 192 (3d Cir. 1999). Consequently, in considering whether an employer regarded its employee as disabled, "[t]he analysis focuses not on [the employee and her] actual abilities, but rather on the reactions and perceptions of the persons interacting or working with [her]." Kelly v. Drexel University, 94 F.3d 102, 108-09 (3d Cir. 1996).

Plaintiff argues that "although [she] was fully capable of performing her essential job duties, Defendant perceived her impairment as being substantially limiting in her ability to act as programming assistant." (Pl.'s Br. at 10.) Plaintiff first points out that she disclosed her chest pains and heart attack to Hicks, Golden, and Smith. (Id.) While this disclosure is evidence of Radio One's knowledge of her heart condition, it does not yield an inference that Radio One perceived her to be limited in a major life activity. See Kelly, 94 F.3d at 109 (holding that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action"); see also Penchishen v. Stroh Brewery Co., 932 F. Supp. 671, 675 (E.D.Pa. 1996) (finding that evidence tending to show defendant's belief in plaintiff's impairment did not create a genuine issue of fact as to whether defendant perceived plaintiff's impairment as a substantial limitation on any major life activity).

Plaintiff also implies that various statements made by Golden and Hicks constitute evidence that Radio One regarded her as disabled. Specifically, Plaintiff points to Golden's statement that "you need to let [Smith] know [about your heart condition], because if you have to start taking time off to go to the doctor appointments, at least let him know in advance[;]" and Hick's statement that, "you should get that checked out." According to Plaintiff, those comments and Smith's change of attitude and demeanor create sufficient facts to establish that Radio One perceived her as substantially limited in a major life activity. We disagree.

Plaintiff must do more than present evidence that her supervisor regarded her as "somehow disabled." Ross v. Kraft Foods North America, Inc. 347 F. Supp. 2d 200 (E.D.Pa. 2004). Moreover, stray remarks from co-workers, even those implicating an employee's disability or suggesting

disqualification from her job, are not alone sufficient to raise the critical inference. See Parker v. Port Authority of Allegheny County, 90 Fed. Appx. 600, 603-04 (3d Cir. 2004) (holding that statement of defendant's agent that plaintiff "couldn't handle the stress that goes along with the job" did not provide reasonable inference that defendant regarded plaintiff as disabled"); Ross, 247 F. Supp. 2d 200 (holding that employee relations manager's statement that, "with your kind of disability you should not be working here" did not demonstrate belief that plaintiff was impaired in ability to perform major life activity). The statements of Golden and Hicks imply, at most, that Radio One employees perceived Plaintiff to have a heart condition that might require medical attention, but not that Plaintiff was substantially limited in a major life activity.

Furthermore, the fact that Radio One offered Plaintiff another administrative role as its receptionist further negates any inference that it believed her incapable of performing a broad class of administrative positions. See Van Houten v. Gober, 2003 WL 21488670, at *6 (E.D.Pa. Jun. 6, 2003) (holding that an offer to transfer plaintiff to another position within the same broad range of jobs supported defendant's position that it did not regard him as disabled). Because Plaintiff can point to no facts from which a reasonable factfinder could conclude that Radio One perceived her to be substantially limited in her major life activities, we find that she was not "regarded as" disabled within the meaning of 12102(2)(c).

### B.  Pretext Under the ADA

Even if Plaintiff could establish that she is disabled under 42 U.S.C. 12102, her ADA claim would still fail because she has not produced sufficient evidence to demonstrate that Radio One's articulated non-discriminatory reason for terminating her was a pretext.

Plaintiff first points to the timing of Smith's "Observations #2" memorandum, which she received the day after she told him of her heart condition, as evidence of pretext. (Pl.'s Br. at 10-11; Pl.'s State. Facts, ¶ 37.) Timing is indeed a factor to be considered in a pretext analysis, and can be suggestive of discrimination. Walton v. Mental Health Ass'n of Southeast Philadelphia, 168 F.3d 661, 669 (3d Cir. 1999). However, "[t]o consider timing . . . in relation to dismissal as evidence of discrimination, there must be some logical connection between the timing or treatment and the possibility of the particular discrimination at issue." Id. Thus, the fact "[t]hat [an employee's] termination came within weeks of his disclosure, standing alone, is not sufficient evidence of pretext." Yudkovitz v. Bell Atlantic Corp., 2004 WL 178330, *8 (E.D.Pa. Jan. 12, 2004).

Although Plaintiff was terminated three weeks after the "Observations #2" memorandum, nothing aside from this timing suggests a discriminatory purpose, especially considering that Smith had consistently complained of Plaintiff's work performance prior to knowing about her disability. The undisputed record reflects that many of the concerns expressed in the "Observations 2" memorandum had been raised previously by Smith. Where there is a documented history of performance issues in an employee's job history prior to disclosure of an impairment, courts have hesitated to find a discriminatory motive in subsequent terminations. See Shaner v. Synthes, 204 F.3d 494, 504-05 (3d Cir. 2000) (finding no evidence of an alleged "sudden change" in plaintiff's performance evaluations where similar criticisms had been expressed before and after his disclosure of MS); Yudkovitz, 2004 WL 178330, at *8 (finding nothing to suggest that plaintiff's impairment played any role in his termination where perceived deficiencies in his work and criticisms of his performance were expressed several months before his disclosure of MS).

Plaintiff also argues that the relative absence of criticism following the "Observations #2" memorandum evidences improvement in plaintiff's performance. (N.T., 2/16/10, pp. 4-9.) The three weeks following Plaintiff's disclosure were not without criticism, however. After November 20, 2007, Smith told Plaintiff that she was "too slow" in completing her work, and on December 4, Smith emailed Plaintiff concerning spelling and grammatical errors in an email that she had drafted. Further, Plaintiff has provided no evidence that her performance was improving, only that there was less criticism of her performance.

Plaintiff's final argument is that Smith's change of attitude toward her following her disclosure constitutes evidence of pretext. Courts have found, however, that an employer's alleged change of attitude toward an employee fails to suggest pretext where an employee has been repeatedly warned about issues with her conduct, and where there is no evidence of discriminatory motive in her termination. See Price v. S-B Power Tool, 75 F.3d 362, 366 (8th Cir. 1996) (finding summary judgment is appropriate where, against a backdrop of documented and discussed absenteeism, plaintiff alleged a change in her employer's attitude toward her because of her epilepsy). We must view all reasonable inferences in favor of Plaintiff as the non-moving party, but cannot infer pretext from a mere change of attitude or demeanor.

In conjunction with his change of attitude, Plaintiff perceived that Smith increasingly attempted to find fault with her performance. (Anderson Depo., pp. 215-17.) However, Plaintiff cannot demonstrate pretext by alleging an unsubstantiated "sudden change" in her performance evaluations. See Shaner, 204 F.3d at 504-05. As already explained, the record reflects that Smith's documented criticism of Plaintiff's performance began approximately one week after Plaintiff assumed her position with Radio One, and continued throughout her two-month employment. His

comments were consistently expressed via email and memorandum, both prior to and following Plaintiff's disclosure.  In light of this pattern of performance criticisms, we find that Plaintiff has not offered evidence sufficient to establish a "sudden change" in the substance or method of Smith's evaluations of her.  Consequently, Plaintiff has failed to raise an inference of pretext under the ADA.

Because Plaintiff has adduced insufficient evidence from which a reasonable jury could find: (1) that she is disabled within the meaning of the ADA; or (2) that her termination was a pretext for discrimination on the basis of a disability, Radio One is entitled to summary judgment on Plaintiff's ADA claim.

## V.  CONCLUSION

For the foregoing reasons, Radio One's Motion for Summary Judgment shall be granted, and Plaintiff's claims shall be dismissed.  Our Order follows.